**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHRIS A. LEPINE                                          CIVIL ACTION

VERSUS                                                   NO. 06-5653

TRAVIS                                                   SECTION "J"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. §2254(e)(2).  Accordingly;

IT IS HEREBY RECOMMENDED that the instant petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY[1]

Petitioner, Chris Lepine, was charged by bill of information with aggravated flight from an officer, in violation of La. R.S. 14:108.1.  Following trial by jury, petitioner was found guilty as charged and originally sentenced to two years incarceration. Thereafter, petitioner was adjudicated to be a fourth-felony offender, his original two-year sentence was vacated, and a 25-year sentence, under the habitual offender law, was imposed.

On June 25, 2004, the Louisiana First Circuit Court of Appeal affirmed petitioner's conviction, but remanded the matter with instructions that petitioner be resentenced as a third-felony offender, determining that one of petitioner's prior offenses, arising from a 1988 guilty plea, could not properly be used to enhance his sentence.[2]  In accordance with the state appellate court's remand, the trial court, on August 26, 2004, adjudicated petitioner to be a third felony offender and sentenced him to four

---

[1]Portions of the procedural history are taken from the Louisiana First Circuit Court of Appeal's unpublished decision on direct appeal, <u>State v. Lepine</u>, 876 So.2d 967 (Table), 2003 KA 2681 (La. App. 1 Cir. 2004), a copy of which is contained in the State rec., vol. 1 of 2.

[2]<u>See</u> <u>Lepine</u>, 2003 KA 2681 at pp. 11-12.  Petitioner did not file a writ application with the Louisiana Supreme Court in connection with the Louisiana First Circuit's June 25, 2004 opinion on direct appeal.

years incarceration with credit for time served.[3]

Following the completion of his direct appeal proceedings, petitioner filed two applications for post-conviction relief.  On February 17, 2006, the Louisiana Supreme Court denied relief in connection with petitioner's first post-conviction application. See State ex rel. Lepine v. State, 924 So.2d 998 (La. 2006).  On September 1, 2006, the state high court denied relief in connection with petitioner's second post-conviction application.  See State ex rel. Lepine v. State, 936 So.2d 197 (La. 2006).[4]

In his original federal habeas corpus petition (rec. doc. 1), which petitioner filed while his second state post-conviction application was pending, petitioner raises the same claim he raised in his first state post-conviction application, namely, that he received ineffective assistance of counsel.  In a "Supplemental Brif [sic]" (rec. doc. 3), which petitioner filed shortly after the Louisiana Supreme Court's September 1, 2006 adverse decision, Lepine, 936 So.2d 197, petitioner raises the same claim he raised in his second state post-conviction application, namely, that the State withheld favorable evidence and introduced trial testimony

_____

[3]A copy of petitioner's August 26, 2004 resentencing transcript is contained in the State rec., vol. 1 of 2.

[4]Both of petitioner's post-conviction applications, along with the district court's adverse decisions and the state appellate court's adverse decisions in connection with said applications, are contained in the State rec., vol. 1 of 2.

that it knew or should have known was not true.

Based upon the above, it is clear that the instant action is timely and that petitioner, as required under Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), has exhausted his state court remedies.   Before proceeding to the merits, the court shall review the applicable facts.[5]

On September 13, 2002, just after 1:00 a.m., Corporal Patrick McCormick of the St. Tammany Parish Sheriff's Office Criminal Patrol Division, was traveling southbound on U.S. Highway 11, in Slidell, Louisiana.   McCormick observed a blue 1985 Ford Bronco that was traveling northbound, "straddling the two lanes" and, according to McCormick's radar, was traveling at a speed of 63 miles per hour in a 45 mile per hour zone.   McCormick was forced to drive on the shoulder of the southbound lane, as the vehicle passed.   McCormick was traveling in a fully marked police car with decals on the sides of the vehicle.   McCormick turned his vehicle around, activated his audible and visual signals, and attempted to execute a traffic stop.   The vehicle did not stop or slow down, but continued to travel at 63 miles per hour.   The pursuit began near an Albertson's grocery store and Lee's Hamburger restaurant on Front Street in Slidell, Louisiana.

---

[5]The facts are taken from the Louisiana First Circuit's unpublished decision, State v. Lepine, 876 So.2d 967 (Table), 2003 KA 2681 (La. App. 1 Cir. 2004), along with this court's review of the trial transcript.

4

McCormick continued to follow the vehicle as it straddled the two lanes of the highway.  Oncoming southbound traffic was forced to shift to the shoulder of the lane.  During his testimony, McCormick specifically stated that two vehicles, in order to avoid a collision with the Ford Bronco, had to leave the roadway at the intersection of North Boulevard and Highway 11.  A second police unit, driven by Lieutenant Ernie Fussell, arrived on the scene in order to assist with the pursuit of the vehicle.  As Fussell approached Ben Thomas, which is an intersection on the northern side of the overpass, he was forced to leave his lane of travel and drive upon the gravel shoulder in order to avoid a collision with the Ford Bronco.  Two more officers, Deputy Hughes and Deputy Caballero, arrived in order to assist with the pursuit.  The pursuit of the Ford Bronco ended at I-12 and Highway 11 when the two responding units of Deputies Hughes and Caballero approached the front of the Ford Bronco, thereby forcing the driver, petitioner, to stop and pull over to the side of the road.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state

court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); Hill, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill, 210 F.3d at 485 (quoting 28 U.S.C.§2254(d)(2)).

**III. ANALYSIS**

    **A.  Ineffective Assistance of Counsel**

The seminal Supreme Court decision regarding ineffective

6

assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), <u>citing</u> <u>Strickland</u>, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the <u>Strickland</u> standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner claims that trial counsel was ineffective due to his failure to present at trial a map of the route he was traveling at the time of his apprehension.  According to petitioner, only a short time transpired, and only a short distance was covered, between the time Officer McCormick began his pursuit of petitioner and the time petitioner's vehicle stopped.  However, petitioner

asserts that Officer Fussell's testimony to the effect that he was
at the law enforcement complex when he learned of Officer
McCormick's pursuit of petitioner's vehicle, and he proceeded to
retrieve his keys, get in his car, and join the chase, gave the
impression that petitioner intentionally alluded apprehension for
a long period of time.  According to petitioner, if a map, showing
the short distance involved in the chase, had been introduced at
trial, jurors would have been aware that only a short period of
time transpired between when the chase began and when it ended and,
based upon this information, "the jury...might well have concluded
that petitioner was, if any thing, guilty of only misdemeanor
flight from an officer rather than aggravated flight from an
officer".[6]  For the following reasons, the court finds petitioner's
argument to be without merit.

First, a review of the elements involved in proving one guilty
of aggravated flight from an officer, specifically, a review of
LSA-R.S. 14:108.1D, reflects that there is no requirement that the
flight from the officer be one covering a particular distance.
Instead, the circumstances must be such that "the operator of the
fleeing vehicle commits at least two of the following acts:

    (1) Leaves the roadway or forces another vehicle to leave
    the roadway.

    (2) Collides with another vehicle.

_____

[6]See Federal rec., doc. 1, petitioner's "Memorandum in Support of
Writ of Habeas Corpus by a Person in State Custody" at p. 10.

(3) Exceeds the posted speed limit by at least twenty-five miles per hour.

(4) Travels against the flow of traffic."

In this case, the undisputed testimony of Officers McCormick and Fussell established that petitioner's vehicle was traveling against the flow of traffic, in the opposite lane of traffic, and that petitioner's vehicle forced other vehicles to leave the roadway.[7]

Second, a review of the trial transcript reflects that Officer Fussell, on direct examination, testified that on the night in question, he was "at the law enforcement complex", "on the computer", "when [he] heard Deputy McCormick advise he was trying to stop a vehicle on Highway 11".[8]  Officer Fussell advised that upon hearing Deputy McCormick's radio transmission, he "immediately left the complex", picking up his keys and proceeding to his car.[9]  When questioned with respect to the amount of time which transpired between the time he received Officer McCormick's radio transmission and the time petitioner's car was stopped, Fussell estimated "less than a minute, maybe a minute."[10]  Similarly, Officer McCormick did not suggest that petitioner led him on a high-speed, long distance chase.  On cross-examination, McCormick confirmed that petitioner

---

[7] See State rec., vol. 2 of 2, p. 148, lines 4-8; p. 149, lines 12-29; p. 159, lines 13-26.

[8] See State rec., vol. 2 of 2, p. 158, lines 10-13.

[9] See State rec., vol. 2 of 2, p. 158, lines 25-32.

[10] See State rec., vol. 2 of 2, p. 160, lines 19-28.

maintained a speed of 63 miles per hour, and he estimated the distance traveled, before petitioner's vehicle came to a stop, to be more than half a mile.[11]

Based upon the above, the court finds that it is not reasonably probable that, as a result of counsel's alleged deficiency in failing to present jurors with a map reflecting the short distance covered by the pertinent chase, that the result of petitioner's proceedings would have been different. Accordingly, petitioner's ineffectiveness claim is without merit.

**B.   State Withheld Favorable Evidence and Introduced Trial Testimony Which It Knew to be Untrue**

Petitioner argues that the State withheld favorable evidence, specifically, "EVENT HISTORY DETAILS", which petitioner has attached, as exhibit B, to his "Supplemental Brif [sic]" (rec. doc. 3). At the top of these "EVENT HISTORY DETAILS", in a category labeled "Event Details", the following is reflected: "Received Time: 01:26:08"; "First at Scene: 01:27:09". Petitioner interprets this information to mean that Officer McCormick witnessed him speeding and traveling into the oncoming lane of traffic at 01:26:08, and that Officer McCormick was "at the scene of the stop", i.e., witnessed that petitioner's vehicle had stopped, at 01:27.09, "61-seconds" later.[12] Therefore, petitioner

---

[11]See State rec., vol. 2 of 2, p. 153, lines 26-27; p. 154, lines 26-27; see also Lepine, 2003 KA 2681 at pp. 13-14.

[12]See petitioner's "Supplemental Brif [sic]" at p. 10.

concludes that Officer McCormick's testimony, along with Officer Fussell's testimony, to the effect that other officers arrived on the scene to assist in petitioner's apprehension and that more than 61 seconds passed from the time McCormick first saw petitioner speeding and traveling in the wrong lane of traffic to the time petitioner's vehicle was stopped, was false, and the State, based upon its knowledge of the "EVENT HISTORY DETAILS", knew this testimony was false.

The seminal case regarding the suppression of evidence was enunciated by the Supreme Court in Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). Under Brady and its progeny, "[t]he prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is material either to guilt or to punishment." Kopycinski v. Scott, 64 F.3d 223, 225 (5th Cir. 1995), citing Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). The prosecution is required to disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment. Brady, 373 U.S. at 87, 83 S.Ct. at 1196; Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); United States v. Bagley, 473 U.S. 667, 675-76, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Thus, to prove a constitutional violation as contemplated under Brady, a petitioner must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3)

11

the evidence was material. <u>United States v. Hughes</u>, 33 F.3d 1248, 1251 (10th Cir.1994).  Of these three components, materiality is generally the most difficult to show.  Materiality is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Strickler v. Greene</u>, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quotation and citation omitted).

In the instant matter, petitioner has clearly failed to satisfy his burden of proof because he has misinterpreted the information contained in the allegedly suppressed evidence.  The information contained within the "EVENT HISTORY DETAILS", under the category entitled "Assigned Unit Status", reflects that units, including Officer McCormick's unit which, according to petitioner, was unit 2410, were in "PURSUIT" of petitioner at 1:27.09, not that any unit had apprehended petitioner at 1:27.09.  Further, petitioner's theory regarding the information contained in the "EVENT HISTORY DETAILS", specifically, that only 61 seconds transpired between the time Officer McCormick's pursuit commenced and the time petitioner's vehicle was stopped, and that Officer McCormick was the only officer on the scene at the time petitioner's vehicle came to a stop, is contradicted by the testimony offered by petitioner's sister, Jane Lepine, in connection with petitioner's motion for a new trial. Specifically,

12

Jane Lepine, who was a passenger in petitioner's vehicle at the time of the pertinent incident,[13] estimated that approximately "two minutes" transpired between the time they noticed that they were being pursued by a sheriff deputy and the time the vehicle came to a stop.[14]   Further, Jane Lepine stated that by the time the chase ended and petitioner's vehicle had come to a stop, two or three "other cops" were on the scene.[15]

To the extent that plaintiff contends that perjured testimony was utilized to obtain his conviction, he simply has not established that either officer testified in a false fashion.   In order to prevail on such a claim, a habeas petitioner must demonstrate: (1) that the testimony in question was actually false, (2) that the testimony was material, and (3) that the prosecution knew that the testimony was false. Nobles v. Johnson, 127 F.3d 409, 415 (5th cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845 (1998); East v. Scott,   55 F.3d 996, 1005 (5th Cir. 1995). "Evidence is 'false' if, inter alia, it is 'specific misleading evidence important to the prosecutor's case in chief.'"   Nobles, 127 F.3d at 415 (quoting Donnelly v. DeChristoforo, 416 U.S. 637,

------

[13]See State rec., vol. 1 of 2, transcript of June 16, 2003 proceeding at p. 3, lines 10-18.

[14]See State rec., vol. 1 of 2, transcript of June 16, 2003 proceeding at p. 4, lines 17-20.

[15]See State rec., vol. 1 of 2, transcript of June 16, 2003 proceeding at p. 3, lines 20-27.

647, 94 S.Ct. 1868, 1873 (1974)).  "False evidence is 'material' only 'if there is any reasonable likelihood that [it] could have affected the jury's verdict.'"  Id. (quoting Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1995), cert. denied, 519 U.S. 1094, 117 S.Ct. 773 (1997)).

In this case, irrespective of how long it took police units to stop Lepine's vehicle or to have arrived at the scene of his arrest, the evidence was clear that he forced vehicles to leave the roadway and traveled against the flow of traffic.  This is all that was necessary in order to establish the crime of which he was accused.  Furthermore, even if Lepine believes that an officer at his trial did not give an accurate account of the facts of the situation, there is no suggestion that the prosecutor knew that any allegedly false testimony was introduced at trial, an essential prong to maintaining this claim.

Accordingly;

## RECOMMENDATION

It is hereby RECOMMENDED that the petition of Chris Lepine for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from

14

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this <u>22nd</u> day of <u>February</u>, 2008.


ALMA L. CHASEZ
United States Magistrate Judge

15